Argued April 2, affirmed May 1, 1928.

# GEORGE L. SIMMONS v. FRIEDE INVESTMENT CO.

(266 Pac. 910.)

**Landlord and Tenant—Court Could not Say as Matter of Law That Tenant Making Authorized Use of Premises and Elevator was Contributorily Negligent in Stepping into Dark Elevator Shaft Without Knowing Whether Elevator was There.**

1. Court could not say as matter of law that tenant who was making use of the premises, including an elevator, as authorized by the elevator operator to whom tenant had been referred by the landlord, was contributorily negligent in stepping into a dark elevator shaft without knowing whether or not the elevator was there.

---

1. Contributory negligence precluding recovery for injury to intending passenger by fall down elevator shaft, see note in Ann. Cas. 1914C, 578. See, also, 9 R. C. L. 1257.

**Negligence—Defendant has Affirmative on Contributory Negligence Issue.**

2. On the issue of contributory negligence, the defendant has the affirmative.

**Negligence—Question of Contributory Negligence is for Jury, Where Minds Might Draw Different Conclusions, or There is Dispute of Facts.**

3. Where there is a dispute as to the facts, or where minds might draw different conclusions, the question of contributory negligence is for the jury.

**Appeal and Error—Supreme Court cannot, on Review, Weigh Evidence or Determine Credibility of Witnesses.**

4. It is not the province of the Supreme Court, on review, to weigh the evidence or determine the credibility of the witnesses.

**Appeal and Error—In Reviewing Refusal of Defendant's Motion for Nonsuit, Supreme Court must Take Favorable View of Plaintiff's Testimony, Assume He Spoke the Truth, and Draw Every Fair and Legitimate Inference in His Favor.**

5. In reviewing lower court's refusal of defendant's motion for a nonsuit, the Supreme Court must take a favorable view of plaintiff's testimony and assume that he spoke the truth, and every fair and legitimate inference which can arise therefrom must be made in favor of plaintiff.

Appeal and Error, 4 C. J., p. 765, n. 93, p. 844, n. 66.
Negligence, 29 Cyc., p. 470, n. 88, p. 514, n. 98, p. 517, n. 15, p. 633, n. 60.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is an action for damages arising out of accidental injuries sustained by plaintiff in falling down an elevator shaft. From a judgment for plaintiff, defendant appeals.                         AFFIRMED.

For appellant there was a brief over the names of *Mr. Chester A. Sheppard, Messrs. Burnett Bros.* and

2. Burden of proof as to contributory negligence, see notes in 28 Am. Rep. 563; 10 Ann. Cas. 4; 33 L. R. A. (N. S.) 1085. See, also, 20 R. C. L. 195.

3. Contributory negligence as question for jury, see note in 8 Am. St. Rep. 849. See, also, 20 R. C. L. 167.

4. See 2 R. C. L. 197.

*Mr. William C. Ralston,* with an oral argument by *Mr. Sheppard.*

For respondent there was a brief over the names of *Messrs. Lonergan & Wagner* and *Mr. Neal R. Crounse,* with an oral argument by *Mr. Frank J. Lonergan.*

BROWN, J.—The relationship between this plaintiff and defendant was that of landlord and tenant. On February 10, 1925, plaintiff rented from defendant two office rooms known as 208–209 Manchester Building, Portland, Oregon, with the intention of using them as a workshop and display-room for automobile accessories, and, after arranging for the rooms, advised with one Leo Friede, manager and secretary of the Friede Investment Company, the owner of the building, on the question of making some alterations therein, i. e., installing a counter, some shelving and a work-bench. The plaintiff testified, in substance, that when he advised the manager of the proposed alterations and consulted him with reference to transporting the necessary material to the rooms, the manager said that the elevator operator "had charge of all furniture, dry goods, or anything that come in the building," and told him to leave it to the elevatorman and he (elevator operator) would see that "it got up there." He further testified:

"I went to the elevatorman * * and so I told the elevatorman that I had this lumber coming up in the evening. * * He said, well, he had an appointment and he could not do anything about it * * . So I asked him about using the elevator and he asked me if I could operate it, and I said yes, that I had operated an elevator for two years * * . He said, 'Well, do you think you could operate this one?' And I

said, 'Yes.' He said, 'Run me up and down.' So I run him up and down a couple of times and he said, 'All right. I will be off work at 6:00 o'clock.' And he said, 'When I am through I will bring it to your floor, to the second floor; and I will come in and notify you and tell you everything is all right.' 'And,' he says, 'if you are here very late, * * keep the light out in the elevator as the old man * * is kicking about the expenses of the house on the electric light bill.' And he says, 'Be sure and keep the light out when the elevator is not in use.' ''

He testified that the elevator was brought up as promised and the operator came to his rooms and said:

"The elevator is at your disposal now. You can use it. I am going out for the evening. I won't be back until way late. Leave it on the floor wherever— on the second floor, wherever you want to, and * * I will get it."

Plaintiff testified that, half an hour later he heard a noise downstairs, and, believing that it was his carpenter whom he was expecting, he went to the elevator and stepped in to turn on the light, but there was no elevator there and as a result he fell down the shaft.

The defendant asserts that the plaintiff should not recover for an injury sustained while making an unauthorized use of the premises. This is a correct statement of the law. However, this plaintiff was not a mere licensee, nor a trespasser; nor was the injury suffered while making any use of the premises not authorized. According to the plaintiff's testimony, when he consulted the manager of the building with reference to transporting material to his rooms the manager referred him to his agent, and the agent gave

him permission and authority to operate the elevator for that purpose.

1. The next question is a serious one. It is contended that the defendant was entitled to a directed verdict because the plaintiff was guilty of contributory negligence as a matter of law in stepping into a dark elevator shaft without knowing whether or not the elevator was there.

A leading case on this question is that of *Tousey* v. *Roberts,* 114 N. Y. 312 (21 N. E. 399, 11 Am. St. Rep. 655), where it was held that an elevator for the carriage of passengers is not deemed to be a place of danger to be approached with great caution, but that it may be assumed that, when the door is thrown open, the place may be safely entered without special examination.

In *Colorado Mtg. & Inv. Co.* v. *Rees,* 21 Colo. 435 (42 Pac. 42), it was likewise held that an elevator is not a place of danger to be approached with great caution; that a person has the right to assume that the owner and operator of the elevator will exercise that degree of care that the nature of such business demands and that the doors to the shaft are not negligently left open, and that, when he finds the door open, he may safely enter without stopping to make a special examination.

To the same effect, see *People's Bank of Baltimore* v. *Morgolofski,* 75 Md. 432 (23 Atl. 1027, 32 Am. St. Rep. 403); *Fisher* v. *Cook,* 23 Ill. App. 621; *Chamber of Commerce Bldg. Co.* v. *Klussman,* 2 Ohio C. C. (N. S.) 83; *Wheeler et al.* v. *Hotel Stevens Co.,* 71 Wash. 142 (127 Pac. 840, Ann. Cas. 1914C, 576).

In Ann. Cas. 1914C, page 578, we find a valuable note relating to contributory negligence precluding re-

covery by fall down elevator shaft, where the editor says:

"In a number of decisions it has been held that, where the door of an elevator shaft is open and the place is dark, it is a question of fact for the jury whether an intending passenger who steps into the shaft without looking to see if the elevator is in place is guilty of contributory negligence precluding a recovery for injuries sustained by falling down the shaft: *Morgan* v. *Saks,* 143 Ala. 139 (38 South. 848); *Colorado Mtg. & Inv. Co.* v. *Rees,* 21 Colo. 435 (42 Pac. 42); *People's Bank of Baltimore* v. *Morgolofski,* 75 Md. 432 (23 Atl. 1027, 32 Am. St. Rep. 403); *Dawson* v. *Sloan,* 49 N. Y. Super. Ct. 304, affirmed, 100 N. Y. 620; *Wolf* v. *Devitt,* 83 App. Div. 42 (82 N. Y. Supp. 189), affirmed, 179 N. Y. 569 (72 N. E. 1152)."

An instructive note by Judge FREEMAN on the subject of liability of owners of elevators used for passengers or employees will be found in 56 Am. St. Rep. 806, where it is written:

"One who owns and operates a passenger elevator, either by himself or his agent, is bound at all times to exercise the highest degree of reasonable care and caution to make it safe for all persons, whether passengers or employees, who have a right to use it, *or who use it with the owner's knowledge or consent.*"

2. On the issue of contributory negligence, the defendant has the affirmative. Are the evidentiary facts and circumstances surrounding the accident in question so plain and clear that this court can say as a matter of law that Simmons was guilty of contributory negligence?

In the case of *Saylor* v. *Enterprise Electric Co.,* 110 Or. 231 (222 Pac. 304, 223 Pac. 725), we quoted with approval from the case of *Toney* v. *Interstate Power*

*Co.*, 180 Iowa, 1362 (163 N. W. 394), wherein the Supreme Court of Iowa wrote:

"The question of law does not arise, save only in those exceptional cases where the plaintiff's want of reasonable care is so manifest and flagrant as to at once convince all fair and candid minds that he did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men. He is not held to an ideally high standard of care as being free from all grounds of criticism."

3. This court has held over and over again that where there is a dispute as to the facts, or where minds might draw different conclusions, the question of contributory negligence is for the jury. See the many cases cited in *Saylor* v. *Enterprise Electric Co., supra.*

4, 5. It is not our province or privilege to weigh the evidence or determine the credibility of the witnesses. In considering this defendant's motion for a directed verdict, we must take a favorable view of the plaintiff's testimony and assume that he spoke the truth, and every fair and legitimate inference which can arise therefrom must be made in favor of the plaintiff: *Farrin* v. *State Industrial Acc. Com.*, 104 Or. 452 (205 Pac. 984).

This case is affirmed.                    AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.